IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


JOHNNY RUFFIN,                    :
                                 :
        Plaintiff,               :
                                 :
v.                               :        CIVIL ACTION 07-0848-M
                                 :
MICHAEL J. ASTRUE,               :
Commissioner of                  :
Social Security,                 :
                                 :
        Defendant.               :


MEMORANDUM OPINION AND ORDER


In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks
judicial review of an adverse social security ruling which
terminated Supplemental Security Income benefits (hereinafter
*SSI*) (Docs. 1, 13-14).  The parties filed written consent and
this action has been referred to the undersigned Magistrate Judge
to conduct all proceedings and order the entry of judgment in
accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc.
18).  Oral argument was heard on June 23, 2008.  Upon
consideration of the administrative record, the memoranda of the
parties, and oral argument, it is **ORDERED** that the decision of
the Commissioner be **REVERSED** and that this action be **REMANDED** for
further proceedings not inconsistent with the Orders of this
Court.

This Court is not free to reweigh the evidence or substitute

its judgment for that of the Secretary of Health and Human Ser-
vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.
1983), which must be supported by substantial evidence. *Richard-
son v. Perales*, 402 U.S. 389, 401 (1971). The substantial evi-
dence test requires "that the decision under review be supported
by evidence sufficient to justify a reasoning mind in accepting
it; it is more than a scintilla, but less than a preponderance."
*Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting
Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing,
Plaintiff was thirty-six years old, had completed a high school
education (Tr. 309), and had previous work experience as a
carpenter's helper, a dump truck driver, and a machine operator
(Tr. 309-10). In claiming benefits, Plaintiff alleges disability
due to sinus/nasal disorders, optic nerve atrophy and reduced
vision, status-post surgeries on his sinuses, and borderline
intellectual functioning (Doc. 13).

The Plaintiff filed a protective application for SSI on July
26, 2000 (Tr. 292-95). Benefits were awarded following a hearing
by an Administrative Law Judge (ALJ) who determined that Ruffin
was disabled as of March 31, 2000 (Tr. 22-32). Subsequently,
however, the Social Security Administration determined that
Plaintiff's condition had improved and that he was no longer
disabled. A hearing was held by an ALJ, the same ALJ who had

previously awarded benefits, who determined that Ruffin's medical condition had improved, as of June 30, 2005, and that although he could no longer perform his past relevant work, there were light jobs in the national economy which he could perform (Tr. 10-20). Plaintiff requested review of the hearing decision (Tr. 9A-C) by the Appeals Council, but it was denied (Tr. 6-9).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Ruffin alleges that:  (1) There has been no showing of medical improvement in his condition; and (2) the ALJ ignored certain evidence of record (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 15).  The medical evidence of record follows.

Plaintiff was admitted to the University of South Alabama Hospital on July 9, 1992 for a left frontal craniotomy to remove an intercranial mucocele extension and orbital decompression and to undergo a polypectomy from the frontal ethmoid, sphenoid, and maxillary sinuses bilaterally; he was discharged on September 18, 1992 (Tr. 184-227).

The Court notes that there is little medical evidence following this two-month hospitalization.  Specifically, the records, which span a period of nearly thirteen years, include various physical examinations and one hospitalization; all of these records were made at a time which either pre-date or occurred during Ruffin's period of disability (*see* Tr. 228-73).

While the Court does not wish to minimize the relevance of the
evidence therein, the Court will not summarize it here as it is
not particularly relevant to the issues here.  The Court will,
however, summarize the results of a psychological evaluation as
Plaintiff has specifically raised a claim regarding it.[1]

On April 1, 2002, Psychologist John R. Goff examined Ruffin
and found him to have questionable memory, but adequate rapport
(Tr. 260-66).  Psychological testing, by way of the WAIS-III,
revealed a Verbal IQ score of 78, a Performance IQ of 77, and a
Full Scale IQ score of 76, placing him in the borderline range of
intelligence; the subscale scores suggested that Ruffin's level
of functioning may have declined.  Scores from the WRAT-III
placed Plaintiff at a fifth-grade level for word recognition, a
seventh-grade level for spelling, and a sixth-grade level for
arithmetic; his reading scores suggested marginal literacy, a
level at which he had "quite likely" functioned throughout his
life (Tr. 262).  Goff's impression was that Ruffin was obsessed
about his vision and, perhaps, terrified about losing the
remainder of his vision:  "One gets the impression that this is
something of an obsessional worry about his physical situation
and perhaps a morbid fear of blindness.  This seems to have
resulted in a general withdrawal from competitive employment from

---

[1]The Court will set out this evidence even though this claim will
not actually be discussed in light of the Court's decision with regard
to Plaintiff's other claim.

other aspects of withdrawal" (Tr. 263).  The Psychologist went on
to state that Plaintiff "was able to understand, follow and carry
out simple instructions;" he noted that Ruffin was mildly to
moderately anxious (Tr. 264).  Goff's conclusions were that
Plaintiff suffered from Somatoform Disorder NOS and that he had
some dependent personality characteristics.  The Psychologist
completed a medical source opinion in which he indicated that
Ruffin would be extremely limited in his ability to respond
appropriately to supervision, co-workers, customary work
pressures, and customers or members of the general public; he
would also be extremely limited in dealing with changes in a
routine work setting (Tr. 265).  Goff further indicated that
Plaintiff would be markedly limited in maintaining attention,
concentration or pace for periods of two hours or more and
moderately limited in his ability to carry out simple
instructions and in carrying out, remembering, or using judgment
in detailed or complex instructions (*id.*).  The Psychologist
thought Ruffin would have an extreme degree of constriction of
interests; he thought that these limitations had been at these
levels of severity since 1994 (Tr. 266).

On June 3, 2005, an ENT examination was performed by Osasere
L. Aghedo, an Osteopath, who noted that Plaintiff was in no
distress (Tr. 122-25).  Aghedo's impression was that Ruffin
suffered from allergic rhino-sinusitis, nasal synachiae, inferior

turbinates hypertrophy, nasal obstruction, and torus palatinus;
the doctor said that he reviewed the medical evidence of record
in reaching these conclusions.

Medical records from Dr. Karen Manning show that she treated
Plaintiff for allergic rhinitis and sinusitis, with resulting
cough, on March 23, 2005 (Tr. 150-51).  On June 23, the doctor
found Plaintiff to have hypertension and obesity; she placed him
on a 1200-calorie diet (Tr. 149).  Manning noted, several weeks
later, that although Ruffin had lost four-to-five pounds, his
blood pressure was up, so she placed him on hypertension
medication (Tr. 148).

On June 10, 2005, Ruffin underwent an examination by Ashley
Williams, an Osteopath, who determined that Plaintiff's distance
vision on the right was 20/20 while he could count fingers at his
face on the left; near distance vision was 2/25 on the right
while he could see hand motion on the left (Tr. 120-21).  With
glasses, Plaintiff had useful binocular vision both near and far,
but only minimal depth perception.  His condition was noted to be
stable, progressive, and permanent; it was recommended that he
avoid doing anything which required good vision.

At the evidentiary hearing before the ALJ, Ruffin testified
that he had lost the vision in his left eye following sinus
surgery and that he suffered from high blood pressure and sinus
problems (Tr. 308-12, 317-18).  He stated that headaches,

6

dizziness, sinus congestion, and loss of vision keep him from working.  Ruffin stated that his condition had deteriorated since he was found to be disabled; specifically, his right vision had weakened and his sinuses were worse.  Dizziness from headaches required Ruffin to lie down three-to-four hours daily; he rated his head pain as eight on a ten-point scale.

Dr. James W. Anderson, testifying as a medical expert (hereinafter *ME*), stated that Plaintiff suffered from "chronic allergic sinusitis and rhinitis with a headache disorder.  He is obese.  He has hypertension.  New, new onset hypertension and he has loss of effective vision in his left eye . . . with normal vision in his right eye which is stable" (Tr. 313; *see generally* Tr. 313-18).  Anderson went on to say that Plaintiff's condition is now stable:  "He's had minimal treatment for his allergic sinusitis and rhinitis and receives no visual treatment.  It's my impression, that medical improvement has been demonstrated" (Tr. 313).  The ME went on to state his opinion that Ruffin was capable of performing a full range of light work that did not require binocular vision and that he had been able to perform this work since June 2005.  Upon questioning by Plaintiff's attorney, Anderson stated that his conclusions were based on the fact that there had been no recent medical treatment for Ruffin's various conditions; he stated that his conclusions were presumptions as there was no actual medical evidence of

improvement (Tr. 315-16).

Patrick Sweeney, testifying as a Vocational Expert (hereinafter *VE*), stated that he had reviewed the evidence of record and that Ruffin would not be able to perform his past relevant work under any of the evaluations completed by either the examining or non-examining physicians (Tr. 316-17, 318-25). The VE went on to state that Plaintiff would not be able to perform any work under the limitations asserted by Psychologist Goff, but that under the limitations found by one of the non-examining physicians (*see* Tr. 140-47) Ruffin would be able to perform specified jobs in the light range classification.  The VE stated that the testimony of Dr. Anderson indicated that Ruffin had the ability to perform light work while Plaintiff's own testimony would preclude all work.  This concludes all of the evidence of record.

In his decision, the ALJ determined that although Ruffin could no longer perform his past relevant work, there were jobs classified as light-exertion which he could perform (Tr. 10-20). In reaching this decision, the ALJ determined that Plaintiff was not a credible witness with regard to the "intensity, persistence and limiting effects" of his symptoms (Tr. 18); Ruffin has not challenged this finding in bringing this action.  The ALJ went on to give substantial weight to the ME's opinions in reaching his own conclusions (Tr. 19).

In bringing this action, Plaintiff's first claim is that
there has been no showing of medical improvement in his condition
(Doc. 14, pp. 6-8).  In discussing how to examine a medical
improvement case, the Eleventh Circuit Court of Appeals has held
that "there can be no termination of benefits unless there is
substantial evidence of improvement to the point of no
disability." *McAulay v. Heckler*, 749 F.2d 1500 (11th Cir. 1985)
(citing *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir.
1982)).  The Appellate Court has further held that "a comparison
of the original medical evidence and the new medical evidence is
necessary to make a finding of improvement." *McAulay*, 749 F.2d
at 1500 (citing *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th
Cir. 1984)).  *See also* 20 C.F.R. § 416.994(b)(C)(vii) (2007).[2]

The Court finds that the ALJ's opinion is not supported by
substantial evidence.  The ALJ gave great weight to ME Anderson's
opinion that there had been medical improvement although the
doctor specifically stated that his conclusions were presumptive

---

[2]"For purpose of determining whether medical improvement has
occurred, we will compare the current medical severity of that
impairment(s) which was present at the time of the most recent
favorable medical decision that you were disabled or continued to be
disabled to the medical severity of that impairment(s) at that time.
If medical improvement has occurred, we will compare your current
functional capacity to do basic work activities (*i.e.*, your residual
functional capacity) based on the previously existing impairments with
your prior residual functional capacity in order to determine whether
the medical improvement is related to your ability to do work.  The
most recent favorable medical decision is the latest decision
involving a consideration of the medical evidence and the issue of
whether you were disabled or continued to be disabled which became
final."

as there was no actual evidence of improvement (*see* Tr. 314-16).
Specifically, the questions by Plaintiff's attorney and the ME's
responses were as follows:

> Q    Okay.  So all the severe impairments
>      that the Judge found in 2002, there's no
>      evidence in the record that he's
>      improved, correct?
>
> A    That's true.
>
> Q    You've just presumed that.
>
> A    I have.

(Tr. 315-16).  Anderson's testimony—and the ALJ's reliance
thereon—is misplaced in light of the clear language of *McAulay*
that "there can be no termination of benefits unless there is
substantial evidence of improvement to the point of no
disability." *McAulay*, 749 F.2d 1500.  Defendant's argument that
Ruffin's sustained lack of medical treatment meets this burden
(Doc. 15, p. 8) is incorrect; the Court does not understand
*McAulay* to countenance the shifting of the burden to make
Plaintiff prove that he is still disabled.  That is precisely
what has happened here.

Based on review of the entire record, the Court finds that
the Commissioner's decision is not supported by substantial evi-
dence.  Therefore, it is **ORDERED** that the action be **REVERSED** and
**REMANDED** to the Social Security Administration for further
administrative proceedings consistent with this opinion, to

include the payment—and back-payment—of SSI benefits to Ruffin
until such time the Social Security Administration can
demonstrate "substantial evidence of improvement to the point of
no disability."  Judgment will be entered by separate Order.

DONE this 25th day of June, 2008.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE